# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| YULON CLERK, on behalf of herself, and all others similarly situated, | : : : | CIVIL ACTION |
| v. | : : | No. 09-05117 |
| ACE CASH EXPRESS, INC., d/b/a/ AMERICA'S CASH EXPRESS. | : : : | |

## MEMORANDUM

**Baylson, J.**                                                                                               **January 29, 2010**

### I. Introduction

Presently before the Court is Defendant's Motion to Compel Individual Arbitration and Stay Litigation (Doc. No. 4), brought pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq. For the reasons discussed below, the Court will grant Defendant's motion.

### II. Factual Background and Procedural History

This action was commenced on September 23, 2009, when Plaintiff Yulon Clerk filed a putative class action Complaint in the Court of Common Pleas for Philadelphia County, Pennsylvania against Defendant ACE Cash Express, Inc. ("ACE") (docketed at Case ID # 090902256). The Complaint sought to certify a class of "[a]ll persons in Pennsylvania, who have purchased or received loans, advances of money on credit, and/or negotiations in an amount less than Twenty-Five Thousand Dollars ($25,000.00) from Defendant, with an interest rate, by itself and/or interest in the aggregate, above six percent (6%) annum, and made payments on such agreements." (Def.'s Not. of Removal, Ex. 2, at 6.) Plaintiff alleges that the interest rate for

each and all of these loans exceeds the interest rate permitted by Pennsylvania law, and asserts, inter alia, claims under the Pennsylvania Consumer Discount Company Act (the "CDCA"), 7 P.S. § 6201 et seq., the Pennsylvania Loan Interest and Protection Law (the "LIPL"), 41 P.S. § 101 et seq., and the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-1 et seq. The relief requested by Plaintiff for herself and for the putative class includes, inter alia: (a) treble damages for interest payments exceeding the statutory rate of six percent (6%); (b) restitution of all excess interest and charges collected by Defendant; (c) disgorgement of all revenue, profits, benefits and monies obtained by Defendant and interest thereon; (d) injunctive and declaratory relief; (e) actual and statutory damages, attorneys' fees and costs; and (f) a fine of up to $5,000 for each loan agreement made in violation of law.

Plaintiff's claims arise from a "payday" loan agreement[1] she entered into on August 23, 2005 with First Bank of Delaware ("FBD"), which was serviced by Defendant ACE. ACE operates via storefront offices located throughout Pennsylvania which service and collect loans like the one at issue here. Plaintiff, a Pennsylvania citizen residing in the city of Philadelphia, obtained the loan from ACE's retail center located at 3544-46 Germantown Avenue, in Philadelphia. The putative class is defined as limited to citizens of Pennsylvania. Defendant ACE is a Texas corporation registered as a foreign company with the Commonwealth of Pennsylvania which has been engaged in the lending business throughout the Commonwealth. ACE has reviewed its records and confirmed that (1) it marketed and serviced FBD loans to more

---

[1] Plaintiff alleges that a "payday" loan is a form of consumer lending involving short-term loans secured by excessively high interest rates. (Pl.'s Opp. to Def.'s Mot. to Compel Arb. at 2.)

than 1,000 Pennsylvania residents in the past four years at rates that would not be permitted by Pennsylvania law, if applicable, and (2) the interest collected on these loans exceeds $5,000,000.

Plaintiff's loan was memorialized in a written "Consumer Installment Loan Agreement" ("Loan Agreement"), which incorporated a separately signed "Waiver of Jury Trial and Arbitration Agreement" ("Arbitration Agreement").[2] The Loan Agreement made reference to the Arbitration Agreement directly above the Loan Agreement's signature lines.

The Arbitration Agreement stated that it covered "all federal or state law claims, disputes or controversies, arising from or relating directly or indirectly to the Loan Agreement," as well as "all claims based upon a violation of any state or federal constitution, statute or regulation." (Def.'s Memo in Support of Mot. to Compel Arb. at 2.) The Arbitration Agreement permitted Plaintiff to select either the American Arbitration Association ("AAA") or the National Arbitration Forum ("NAF") to administer the arbitration, and also stated that it was "made

---

[2] Defendant indicated that it was unable to locate the original or copies of the signed Loan Agreement or Arbitration Agreement after diligent searching, and therefore concluded that such documents were lost or destroyed. However, a Declaration from Joe Edwards, which accompanied Defendant ACE's motion, establishes that when Plaintiff obtained her loan, only one form of Loan Agreement and Arbitration Agreement was used in Philadelphia for FBD loans serviced by ACE. As ACE correctly points out, the fact that these documents have been lost or destroyed does not prevent their enforcement. See Fed. R. Evid. 1004(1); see also, e.g., Anglin v. Tower Loan of Mississippi, 635 F. Supp. 2d 523, 525 n.1 (S.D. Miss. 2009) ("[Defendant] has not produced the arbitration agreement signed by plaintiff because it has been unable to locate that document. However, an affidavit . . . accompanying [Defendant]'s motion establishes that every . . . borrower was required to execute [Defendant]'s then standard form of Arbitration Agreement, failing which there would have been no loan. . . . [T]he fact that the arbitration agreement has been lost or destroyed does not prevent its enforcement."). Further, Plaintiff does not dispute that she signed the Loan Agreement and Arbitration Agreement, or that Defendant's description of the terms of these agreements is inaccurate or incorrect. The Court therefore finds that Defendant's statement of the terms of the agreements accurately represent the terms as they existed when Plaintiff signed her Loan Agreement and Arbitration Agreement, and will consider them as such.

pursuant to a transaction involving interstate commerce and shall be governed by the FAA."
(Def.'s Memo in Support of Mot. to Compel Arb. at 2-3.) Additionally, the Arbitration Agreement expressly stated that any arbitration would be conducted on an individual – and not a class action – basis, gave Plaintiff thirty (30) days to reject the Arbitration Agreement without affecting any other aspect of her loan, and set forth the procedure for doing so. Plaintiff did not exercise her right to reject the Arbitration Agreement.

On November 6, 2009, Defendant ACE removed the matter to federal court (Doc. No. 1). On November 12, 2009, Defendant ACE filed a Motion to Compel Individual Arbitration and Stay Litigation (Doc. No. 4), asking this Court to compel Plaintiff to arbitrate her individual claims against it in accordance with the terms of the parties' written Arbitration Agreement, and to stay the litigation pending the completion of arbitration. Plaintiff filed her response on November 25, 2009 (Doc. No. 5), and Defendant ACE filed its reply on December 2, 2009 (Doc. No. 7).

### III. Parties' Contentions

#### A. Defendant

In its Motion to Compel Individual Arbitration and Stay Litigation, and in its brief in support, Defendant ACE argues that all of the requirements for arbitration under the FAA are satisfied because (1) interstate commerce indisputably exists, (2) a written Arbitration Agreement indisputably exists, (3) Plaintiff's claims indisputably fall within the broad scope of the Arbitration Agreement, and (4) Plaintiff agreed to arbitrate on an individual basis.

Defendant ACE next argues that the Arbitration Agreement is not unconscionable, either substantively or procedurally. Regarding substantive unconscionability, Defendant ACE argues

that: (1) the costs associated with the arbitration agreement do not render it substantively unconscionable because Plaintiff can seek to recover her attorney's fees and costs if she prevails in arbitration and because Plaintiff's arbitration fees are not a barrier to arbitration; and (2) the class action waiver does not render the arbitration agreement substantively unconscionable because (a) the class action waiver is not substantively unconscionable under Delaware law, which governs the Loan Agreement, (b) even under Pennsylvania law, the class action waiver does not render the Arbitration Agreement substantively unconscionable, and (c) it does not hinder Plaintiff or exculpate Defendant. Regarding procedural unconscionability, Defendant ACE argues that there is no merit to Plaintiff's allegation that the Arbitration Agreement is procedurally unconscionable.

Defendant ACE further argues that the AAA is fully available to administer the arbitration.

### B. Plaintiff

Plaintiff argues that Defendant ACE made an illegal loan and now seeks to avoid responsibility based on an unenforceable Arbitration Agreement and class action waiver. Plaintiff further argues that the chosen arbitrators set forth in the Arbitration Agreement – the AAA and the NAF – are both unavailable to administer the arbitration, thus making the Arbitration Agreement and class action waiver unenforceable.

Plaintiff next argues that a choice-of-law analysis requires that Pennsylvania law be applied, and that under Pennsylvania law, the Arbitration Agreement is both procedurally and substantively unconscionable. Regarding procedural unconscionability, Plaintiff argues that the Loan Agreement is a contract of adhesion to which Plaintiff had no meaningful choice when

accepting its terms. Plaintiff further argues that she had no part in drafting the Arbitration Agreement, that she did not recall reading the Arbitration Agreement, and that Defendant is a sophisticated company which had a superior bargaining position. Plaintiff also argues that the presence of an "opt-out" clause does not automatically compel the conclusion that the Arbitration Agreement was not procedurally unconscionable. Regarding substantive unconscionability, Plaintiff argues that the class action waiver term unreasonably favors Defendant ACE because the cost of arbitration is prohibitive for Plaintiff, because the arbitrator has discretion to award attorneys' fees and expenses, because the arbitration provision limits Plaintiff's judicial recourse, and because it insulates Defendant ACE from liability.

## IV.     Discussion

### A.     Legal Standard

A district court decides a motion to compel arbitration under the same standard it applies to a motion for summary judgment. Kaneff v. Delaware Title Loans, Inc., 587 F.3d 616, 620 (3d Cir. 2009). The party opposing arbitration is given "the benefit of all reasonable doubts and inferences that may arise." Id. (quoting Par-Knit Mills, Inc. V. Stockbridge Fabrics Co., Ltd., 636 F.2d 51, 54 (3d Cir. 1980)).

### B.     Federal Arbitration Act

The FAA, 9 U.S.C. § 1 et seq., creates a body of federal substantive law establishing and governing the duty to honor agreements to arbitrate disputes. Century Indemnity Co. v. Certain Underwriters at Lloyd's, 584 F.3d 513, 522 (3d Cir. 2009) (citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25 n.32 (1983)). Originally passed in 1925, the FAA was enacted to "revers[e] centuries of judicial hostility to arbitration agreements" by placing

arbitration agreements "upon the same footing as other contracts." Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 225-26 (1987) (quotation and citation omitted). The FAA establishes "a strong federal policy in favor of the resolution of disputes through arbitration." Alexander v. Anthony Intern., L.P., 341 F.3d 256, 263 (3d Cir. 2003) (citing Moses H. Cone, 460 U.S. at 24). Accordingly, federal law "presumptively favors the enforcement of arbitration actions." Id.

The Supreme Court has stated that Congress' "preeminent concern . . . in passing the [FAA] was to enforce private agreements into which parties had entered, and that concern requires that we rigorously enforce agreements to arbitrate . . . ." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 221 (1985). The Third Circuit has reiterated this sentiment, stating: "Congress enacted the FAA 'to ensure judicial enforcement of privately made agreements to arbitrate,' rather than restrict the force of arbitration agreements. . . . [T]he passage of the [FAA] was motivated, first and foremost, by a congressional desire to enforce agreements into which parties had entered, and [courts] must not overlook this principal objective . . . ." Palcko v. Airborne Express, Inc., 372 F.3d 588, 595 (3d Cir. 2004) (quoting Dean Witter, 470 U.S. at 219, 220). The FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." Shearson, 482 U.S. at 226 (citing 9 U.S.C. § 2). The FAA also provides that a court must stay its proceedings if it is satisfied that an issue before it is arbitrable under the agreement, and it authorizes a district court to issue an order compelling arbitration if there has been a "failure, neglect, or refusal" to comply with an arbitration agreement. Id. (citing 9 U.S.C. §§ 3, 4).

The Court begins its analysis by noting that the FAA governs the instant dispute. Under the FAA, determining whether there is an enforceable arbitration agreement between the parties that compels arbitration and a stay or dismissal of the present action requires a court to consider "(1) whether a valid agreement to arbitrate exists between the parties and (2) whether the specific dispute falls within the substance and scope of that agreement." Martin v. Delaware Title Loans, Inc., 2008 WL 4443021, at *3 (E.D. Pa. Oct. 1, 2008) (citing Trippe Mfg. Co. V. Niles Audio Corp., 401 F.3d 529, 532 (3d Cir. 2005)). Here, Defendant correctly argues – to which Plaintiff sets forth no argument in response – that (1) interstate commerce exists as defined under the FAA, (2) Plaintiff entered into a Loan Agreement that included an Arbitration Agreement, and (3) Plaintiff's claims fall within the scope of the Arbitration Agreement. Thus, the Court must determine only whether a valid agreement to arbitrate exists between the parties.

We begin our disposition of this issue by emphasizing the well-settled principle that questions "concerning the interpretation and construction of arbitration agreements are determined by reference to federal substantive law." Fluke v. Cashcall, Inc., 2009 WL 1437593, at *4 (E.D. Pa. May 21, 2009) (quoting Gay v. CreditInform, 511 F.3d 369, 388 (3d Cir. 2007)). However, the Supreme Court has held that, pursuant to § 2 of the FAA, relevant state law may be applied "if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996) (citing Perry v. Thomas, 482 U.S. 483, 492 n.9 (1987); 9 U.S.C. § 2). Indeed, § 2 of the FAA states that an arbitration agreement may be held invalid "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Thus, courts may apply generally applicable state law contract defenses "such as fraud, duress, or unconscionability . . . to

invalidate arbitration agreements [. . .] without contravening [the FAA]." Doctor's Assocs., 517 U.S. at 687; Gay, 511 F.3d at 388.

In the present case, Plaintiff argues that the Arbitration Agreement and class action waiver are unenforceable because the Arbitration Agreement is unconscionable. Accordingly, the Court will, pursuant to § 2 of the FAA, use generally applicable state law contract defenses regarding unconscionability to determine if the Arbitration Agreement is unenforceable. For this reason, the Court must determine which state's generally applicable contract defenses apply to the instant dispute.

      **C.**      **Choice of Law**

The Arbitration Agreement stated that it was governed by Delaware law – a fact recognized by both parties. (Def.'s Memo in Support of Mot. to Compel Arb. at 17; Pl.'s Opp. to Def.'s Mot. to Compel Arb at 11.) Nevertheless, Plaintiff now argues that Pennsylvania law should be applied to the Arbitration Agreement to determine whether it is unconscionable. (Pl.'s Opp. To Def.'s Mot. to Compel Arb. at 11.) As a federal court sitting in diversity in Pennsylvania, we must apply Pennsylvania's choice-of-law rules in deciding whether the parties' contractual designation of Delaware law is enforceable. Fluke, 2009 WL 1437593, at *5 (citing Klaxon Co. v. Stentor Elec. Mfg. Co., Inc., 313 U.S. 487 (1941)).

Pennsylvania courts generally apply the law of the state agreed upon by the contracting parties. Id. (citing Miller v. Allstate Ins. Co., 763 A.2d 401, 403 (Pa. Super. Ct. 2000)). The Third Circuit has recognized this principle, stating: "Applying Pennsylvania law, we [recognize] that 'Pennsylvania courts generally honor the intent of the contracting parties and enforce choice of law provisions in contracts executed by them.'" Gay, 511 F.3d at 389 (quoting Kruzits v.

Okuma Mach. Tool, Inc., 40 F.3d 52, 55 (3d Cir. 1994)).

Nevertheless, the Pennsylvania Supreme Court "has recognized that choice-of-law agreements <u>can be avoided</u> when the terms <u>offend Commonwealth public policy</u>[,] even in disputes between contracting parties." <u>Pennsylvania Dep't of Banking v. NAS of Delaware, LLC</u>, 948 A.2d 752, 759 n.9 (Pa. 2008) (emphasis added). This principle is embodied in § 187 of the Restatement (Second) of Conflict of Laws ("Section 187," or "§ 187"), which has been adopted by Pennsylvania courts. <u>Schifano v. Schifano</u>, 471 A.2d 839, 843 (Pa. Super. Ct. 1984); <u>Kruzits</u>, 40 F.3d at 55.

Section 187 provides that the law of the state chosen by the parties to govern their contractual rights and duties will be applied unless:

> (a) <u>the chosen state has no substantial relationship</u> to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>
> (b) application of the <u>law of the chosen state</u> would be <u>contrary to a fundamental policy of a state</u> which has a <u>materially greater interest than the chosen state</u> in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

§ 187 (emphasis added). Thus, while recognizing that the parties in the present case contractually agreed to apply Delaware law, the Court will analyze § 187 to determine whether Pennsylvania law instead should govern the Arbitration Agreement.

The Court first looks to subsection (a) of § 187, and finds that Delaware does have a substantial relationship to the parties and the transaction. In <u>Fluke</u>, as here, the contractual choice-of-law provision called for application of Delaware law; additionally, the plaintiff had applied for a loan from FBD, the same lending bank as in the present case, which was

incorporated in Delaware and had its principal place of business there. 2009 WL 1437593, at *5. The Fluke court concluded: "[I]t cannot be said that Delaware has no substantial relationship to the parties or the transaction pursuant to subsection (a) of § 187." Id. Here, similarly, Delaware has a substantial relationship to the parties and the transaction for purposes of § 187(a).

We must next determine, under subsection (b) of § 187, whether the application of Delaware law would be "contrary to a fundamental policy" of a state which has a "materially greater interest in the determination of the particular issue." As explained below, the Court believes that the application of Delaware law would be contrary to a fundamental policy of Pennsylvania, and further, that Pennsylvania has a materially greater interest in the determination of this issue.

First, the Court finds that applying Delaware law would be contrary to a fundamental policy of Pennsylvania. The crux of Plaintiff's complaint is that Defendant ACE unlawfully charged interest rates which exceeded the maximum lawful amount of six percent (6%) under Pennsylvania's general usury law. Delaware, on the other hand, has no usury law. Kaneff, 587 F.3d at 622. Thus, as the Third Circuit recently stated, "[t]here can be no question that there is a true conflict between Delaware and Pennsylvania in their approach to and treatment of usurious interest." Id. Accordingly, the Court believes that applying Delaware law would contravene a fundamental policy of Pennsylvania.

Second, the Court finds that Pennsylvania has a materially greater interest than Delaware in the determination of whether this Arbitration Agreement is unconscionable. The Third Circuit's recent decision in Kaneff controls the Court's determination. In Kaneff, as here, the plaintiff was a low-income borrower and Pennsylvania resident who challenged an arbitration

provision as being unconscionable; also as here, the parties contractually agreed that Delaware law was to apply.

The plaintiff in Kaneff argued that Pennsylvania had the greater interest in the transaction because she lived there, and that Pennsylvania had a strong interest in applying its consumer protection laws for the benefit of its residents. Id. at 623. The lender-defendant argued that the loan agreement was entered into and signed in Delaware, by a Delaware corporation, at its offices in Delaware. Id. Unlike in the present case, where Plaintiff took out her loan from Defendant's store in Pennsylvania, the plaintiff in Kaneff physically drove from Pennsylvania to Delaware to take out the loan because the defendant's only offices were located in Delaware.

The Third Circuit ultimately held that Pennsylvania had a materially greater interest than Delaware in the determination of whether the arbitration clause was unconscionable, and accordingly, chose to apply Pennsylvania law. The Third Circuit was instructed by a recent Pennsylvania Commonwealth Court case which, when dealing with the Pennsylvania Department of Banking's policy regarding non-mortgage consumer lending, commented on the Department's "special knowledge of how such loans can affect the social life of the community." Id. (quoting Cash America Net of Nevada, LLC v. Pennsylvania [Dep't] of Banking, 978 A.2d 1028, 1037 (Pa. Commw. Ct. 2009)). As the Third Circuit noted, the Cash America Net court referred to a prior Pennsylvania Supreme Court opinion, Pennsylvania Dep't of Banking v. NCAS of Delaware, LLC, 948 A.2d 752, 754 (Pa. 2008), which stated:

> [T]he methods used by usurious lenders, often involv[e] subterfuge, to attempt to circumvent fundamental public policy. The Supreme Court noted the well-established principle articulated over 100 years ago . . . that [Pennsylvania]'s public policy prohibits usurious lending, and it cited a decision entered almost 70 years ago in [Equitable Credit & Discount Co. v.

> Geier, 342 Pa. 445, 21 A.2d 53 (1941)], holding that it is well settled in constitutional law that the <u>regulation of interest rates</u> is a subject within the police power of the state <u>particularly when it comes to cases involving small loans</u>, which <u>profoundly affect the social life of the community</u>.

<u>Kaneff</u>, 587 F.3d at 623-24 (emphasis added) (quoting <u>Cash America Net</u>, 978 A.2d at 1038) (citing <u>NCAS of Delaware, LLC</u>, 948 A.2d 754; <u>Geier</u>, 21 A.3d 53; <u>Earnest v. Hoskins</u>, 100 Pa. 551 (1882)). The Third Circuit ultimately held that "[u]nder all of the circumstances set forth above, <u>Pennsylvania has a materially greater interest than Delaware</u> in the determination of whether the arbitration clause is unconscionable. Although the issue is not free from doubt, we conclude that Pennsylvania's interest in the dispute, <u>particularly its antipathy to high interest rates</u> . . . <u>represents such a fundamental policy</u> that we <u>must apply Pennsylvania law</u>." <u>Id.</u> (emphasis added).

The Third Circuit's holding in <u>Kaneff</u> controls here. Accordingly, the Court finds that applying Delaware law to the Arbitration Agreement would be contrary to a fundamental policy of Pennsylvania, and that Pennsylvania has a materially greater interest than Delaware, the state chosen in the Arbitration Agreement. Thus, the Court will apply Pennsylvania law when determining whether the Arbitration Agreement is unconscionable.

### D. Unconscionability

Under Pennsylvania law, unconscionability is a "defensive contractual remedy which serves to relieve a party from an unfair contract or from an unfair portion of a contract." <u>Harris v. Green Tree Fin. Corp.</u>, 183 F.3d 173, 181 (3d Cir. 1999) (quoting <u>Germantown Mfg. Co. V. Rawlinson</u>, 491 A.2d 138, 145 (Pa. Super. Ct. 1985)). The test for unconscionability is "whether one of the parties lacked a meaningful choice about whether to accept the provision in question

-13-

and the challenged provision or contract unreasonably favors the other party to the contract." Hopkins v. New Day Fin., 643 F. Supp. 2d. 704, 716 (E.D. Pa. 2009).

In evaluating claims of unconscionability, courts generally recognize two categories: (1) procedural unconscionability, and (2) substantive unconscionability. Id. (citing Ferguson v. Lakeland Mut. Ins. Co., 596 A.2d 883, 885 (Pa. Super. Ct. 1991); Bishop v. Washington, 480 A.2d 1088, 1095 (Pa. Super. Ct. 1984); Germantown, 491 A.2d at 145-46). "Procedural unconscionability pertains to the process by which an agreement is reached and the form of an agreement, including the use therein of fine print and convoluted or unclear language." Martin, 2008 WL 4443021, at *3 (quoting Alexander, 341 F.3d at 265). Substantive unconscionability refers to terms that unreasonably favor one party to which the disfavored party does not truly assent. Id. (citing Alexander, 341 F.3d at 265).

The party challenging a contract provision as unconscionable generally bears the burden of proving unconscionability. Id. (citing Bishop, 480 A.2d at 1094). Specifically, a party challenging an arbitration provision must prove that the arbitration clause is both procedurally and substantively unconscionable in order for it to be found unenforceable. Zimmer v. CooperNeff Advisors, Inc., 523 F.3d 224, 230 (3d Cir. 2008) ("[The Pennsylvania Supreme Court] recently confirm[ed] that the party challenging an arbitration agreement has the burden to demonstrate that the agreement is both procedurally and substantively unconscionable." (emphasis in original)); Hopkins, 643 F. Supp. 2d. at 716 ("Under Pennsylvania law, there must be both procedural and substantive unconscionability in order to void an arbitration provision."). In the present case, Plaintiff argues that the Arbitration Agreement is both procedurally and substantively unconscionable under Pennsylvania law, and thus should be found unenforceable.

### 1. Procedural Unconscionability

The Court begins by determining whether the Arbitration Agreement is procedurally unconscionable. Procedural unconscionability concerns the process by which the parties entered into a contract. Hopkins, 643 F. Supp. 2d. at 717-18. The Pennsylvania Supreme Court has defined procedural unconscionability as the "absence of meaningful choice on the part of one of the parties." Id. at 718 (quoting Witmer v. Exxon Corp., 434 A.2d 1222, 1228 (Pa. 1981)). Procedural unconscionability is generally found where there is a "contract of adhesion" – meaning, a contract prepared by a party with excessive bargaining power and presented to the other party on a "take it or leave it" basis. Id. (citing Denlinger, Inc. v. Dendler, 608 A.2d 1061, 1068 (Pa. Super. Ct. 1992)). The general test is whether the party challenging the agreement had any meaningful choice regarding the acceptance of its provisions. Id. (citing Thibodeau v. Comcast Corp., 912 A.2d 874, 886 (Pa. Super. Ct. 2006)).

Here, Plaintiff argues that the Arbitration Agreement is procedurally unconscionable because she had no meaningful choice in accepting its terms, because it was drafted entirely by Defendant without any involvement by Plaintiff, and because Plaintiff is not a sophisticated consumer while Defendant is, on the other hand, is a multimillion-dollar company in a superior bargaining position. The Court disagrees, noting that the Arbitration Agreement gave Plaintiff the explicit right to reject the entire Arbitration Agreement within thirty (30) days of entering into it. Further, the Arbitration Agreement indicated that such a rejection would not have any adverse effect on the terms of Plaintiff's loan. For this reason, Plaintiff's argument that she had no meaningful choice in accepting the terms of the Arbitration Agreement fails.

In making our determination, the Court is guided by Chief Judge Bartle's opinion in

Fluke, in which he stated:

> An opt-out provision . . . <u>seriously undermines</u> a consumer's contention that the arbitration agreement was unconscionable. [Plaintiff] was given the option to say "no" to the arbitration provision and he was given a full 60 days to do so. In that way, <u>he had complete control over the terms of the agreement</u> and <u>it cannot be said</u> that the arbitration agreement was <u>presented to him on a take-it-or-leave[-]it basis</u>.

2009 WL 1437593, at *8 (emphasis added). Here, as in Fluke, Plaintiff was given the option to say "no" to the Arbitration Agreement,[3] but failed to do so. As Judge Tucker stated in Martin, another case where an arbitration provision included an opt-out clause, "Plaintiff was [not] <u>misled or forced</u> into executing the loan agreement. Rather, the arbitration provision provides an <u>unconditional right to reject arbitration</u> without affecting any other provision of the loan agreement. . . . Plaintiff read and executed the loan agreement, and further chose not to exercise the right to reject the arbitration provision." 2008 WL 4443021, at *4 (emphasis added). Here, because Plaintiff was given the express opportunity to reject the Arbitration Agreement and failed to do so, Plaintiff's argument that the Arbitration Agreement was presented on a take-it-or-leave-it basis fails.

Plaintiff further argues that the Arbitration Agreement is procedurally unconscionable because she did "not recall reading" or "did not actually read" it (Pl.'s Opp. to Def.'s Mot. to Compel Arb. at 15, 3), but that even if she had read it, she would not have been able to comprehend what she was signing. This argument also fails. Indeed, the Pennsylvania Supreme Court has explicitly rejected such reasoning, stating that "failure to read [a contract] is an

---

[3] Although Plaintiff was given thirty (30) days to opt-out instead of the 60 days provided in Fluke, the Court finds that such an amount of time is reasonable. See generally Martin, 2008 WL 4443021, at *4 (arbitration agreement not procedurally unconscionable where borrower was given fifteen (15) days to opt-out).

unavailing excuse or defense and cannot justify an avoidance, modification or nullification of [a] contract or any provision thereof." Standard Venetian Blind Co. v. American Empire Ins. Co., 469 A.2d 563, 566 (Pa. 1983) (quotation omitted). Further stated, "[i]f a party, who can read . . . will not read . . ; or if, being unable to read, will not demand to have it read or explained to him, he [or she] is guilty of supine negligence, which . . . is not the subject of protection, either in equity or at law." Id. at n.* (quoting Greenfield Estate, 14 Pa. 489, 496 (Pa. 1850)); see also Federowicz v. Snap-On Tools Corp., 1992 WL 55723, at *4 (E.D. Pa. Mar. 12, 1992) ("Plaintiff's argument that the arbitration clause is not effective because he failed to read it before signing and defendant owed him an explanation is unpersuasive."); In re Brown, 311 B.R. 702, 707 (E.D. Pa. 2004) ("[A]n elementary principle of contract law is that a party signing a written contract has a duty 'to inform himself of its contents before executing it . . . and in the absence of fraud or overreaching he will not be allowed to impeach the effect of the instrument by showing that he was ignorant of its contents or failed to read it.'" (quotation omitted)).

Viewing the evidence in the light most favorable to Plaintiff, and with all reasonable inferences drawn in her favor, the Court finds that the Arbitration Agreement is not procedurally unconscionable. Because Plaintiff has failed to meet her burden of proving procedural unconscionability, the Court need not delve into a inquiry regarding substantive unconscionability. See Zimmer, 523 F.3d at 230 ("Because we have concluded that the arbitration agreement here was not procedurally unconscionable and reverse on that basis, we need not decide whether the District Court's decision as to substantive unconscionability was correct."); Oyler v. Fin. Independence and Resource Educ., 2008 WL 275729, at *4 (M.D. Pa. Jan. 30, 2008) ("[T]he court finds that the contract's arbitration provision was not procedurally

unconscionable. In light of this finding, the court need not address the conjunctive issue of substantive unconscionability."). The Court therefore finds that the Arbitration Agreement is valid, and because Plaintiff's claims are within its scope, the parties must arbitrate their disputes.

### E. Availability of AAA to Administer the Arbitration

Finally, Plaintiff argues that both of the chosen arbitrators – the NAF and the AAA – are unavailable to arbitrate the dispute, thus making the Arbitration Agreement and class action waiver unenforceable. Defendant's reply brief thoroughly refutes Plaintiff's argument and demonstrates that the AAA is available to arbitrate this case.

Both parties acknowledge that (1) the NAF is no longer available to arbitrate this dispute, and (2) the AAA issued a moratorium on consumer debt collection arbitrations in which "the company is the filing party." Here, however, as Defendant correctly points out, the instant dispute is not one in which the <u>company</u> is the filing party. Instead, it is <u>Plaintiff</u> who is the filing party, as she seeks to prosecute her claims against Defendant ACE. Plaintiff's argument simply fails to address this fact, and instead focuses on an analysis of the alleged inapplicability of § 5 of the FAA. Such an argument is irrelevant where, as here, the AAA remains available and able to administer the arbitration.

## V. Conclusion

For the foregoing reasons, the Court concludes that Plaintiff's claims are subject to arbitration, that the Arbitration Agreement is not unconscionable, and that the AAA is available to administer the arbitration. Accordingly, the Court will compel the parties to arbitrate their disputes and will stay the stay the pendant litigation.

An appropriate Order follows.

A:\Arbitration Memo - Clerk v. Ace Cash.wpd